UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                              CASE NO: 2:15-cr-2-FtM-38CM

THOMAS DAQUAN DERICHO and
CORNELIUS DAVON DERICHO
                                              /

### **ORDER**[1]

This matter comes before the Court on consideration of Magistrate Judge Carol Mirando's Report and Recommendation (Doc. #108), filed on August 13, 2015, recommending Defendant Cornelius Davon Dericho's ("Cornelius"[2]) Motion to Suppress (Doc. #47), in which Defendant Thomas Daquan Dericho ("Thomas") joined (Doc. #49), be denied. Both Thomas and Cornelius filed Objections to the Report and Recommendation on August 27, 2015. (Doc. #109; Doc. #110). The Government failed to file a response to either Objection. The matter is ripe for review.

### **Standard**

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1); *United States v. Powell*, 628 F.3d

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] Because Defendants share the same last name, the Court will refer to each Defendant by their first name.

1254, 1256 (11th Cir. 2010). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also United States v. Farias-Gonzalez*, 556 F.3d 1181, 1184 n. 1 (11th Cir. 2009). The district judge reviews legal conclusions *de novo*, even in the absence of an objection. See *Cooper-Houston v. So. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994). A district court may not reject the credibility determination of a magistrate judge without personally rehearing disputed testimony from the witness. See *Powell*, 628 F.3d at 1256-58.

## Discussion

On May 11, 2015, Cornelius filed a Motion to Suppress. (Doc. #47). One week later, the Court allowed Thomas to join in the Motion. (Doc. #49). The Government filed a Response in Opposition on May 20, 2015. (Doc. #52). Shortly thereafter, Magistrate Judge Carol Mirando held an evidentiary hearing. (Doc. #72). The Court then required Thomas to file supplemental briefs as to his standing to bring a motion to suppress (Doc. #81) and his decision to waive his presence at the hearing. (Doc. #83; Doc. #90; Doc. #101).[3] The Government filed a Supplemental Brief on these issues. (Doc. #82). Judge Mirando issued a Report and Recommendation recommending the Motion to Suppress be denied. (Doc. #108). Both Thomas and Cornelius now take issue with some of Judge Mirando's findings contained therein. (Doc. #109; Doc. #110).

**A. Thomas' Objections.**

Thomas asserts four objections detailing how Judge Mirando erred in her Report. First, he argues that Judge Mirando "erroneously concluded there is no evidence that

---

[3] Based on this briefing, the Court is sufficiently convinced that Thomas knowingly and voluntarily waived his right to attend the suppression hearing.

Troopers in the Criminal Interdiction Unit selectively enforce traffic laws." (Doc. #109 at 2). Second, Judge Mirando "erroneously concluded that violations of Florida's traffic code, without more, do[] not rise to the level of extreme circumstances in *Whren [v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)]." (Doc. #109 at 3). Third, Judge Mirando "erroneously concluded that Trooper Ferrell lawfully stopped the vehicle in which [Thomas] was traveling." (Doc. #109 at 5). Finally, Judge Mirando "erroneously concluded that Trooper Ferrell and Trooper Grider provided credible admissible testimony." (Doc. #109 at 5). The Court will address each argument in turn.

1. *There is No Evidence That the Criminal Interdiction Unit Employs Standards That Violate the Equal Protection Clause*

Thomas first posits that Judge Mirando erred by failing to consider testimony that illustrates the Criminal Interdiction Unit ("CIU") of the Florida Highway Patrol selectively enforces traffic laws. (Doc. #109 at 2). And this testimony "support[s] a finding that standards implemented by the CIU subject[] vehicles with innocent, noncriminal behavior to being stopped by CIU officers in violation of the Equal Protection Clause." (Doc. #109 at 3). Even without the benefit of a response from the Government, the Court finds this argument unpersuasive.

Thomas bases this argument entirely upon the testimony of Florida Highway Patrol Trooper Booker Ferrell, Jr. But in doing so, Thomas paraphrases and exaggerates Trooper Ferrell's testimony to support his position. Trooper Ferrell's actual testimony fails to reveal any "standards" implemented by the CIU that violate the Equal Protection Clause. For example, Thomas contends Trooper Ferrell "indicated that the standard Malibu model of vehicle in which [he] was traveling was more in line with the type of vehicle recognized for couriering drugs." (Doc. #109 at 2 (citing Doc. #85 at 109:1-13)).

Trooper Ferrell's actual testimony, however, states that drug traffickers do not typically utilize "souped up" vehicles and instead try not to draw attention to themselves. (Doc. #85 at 109:1-13). Thomas somehow interprets this as Trooper Ferrell "indicating" that the particular car involved in the underlying traffic stop, a Chevrolet Malibu, is "in line" with the type of cars typically used for couriering drugs, and then insinuates Trooper Ferrell initiated the underlying traffic stop on this basis alone. (Doc. #109 at 2). There is no support for this position.

The remaining testimony cited by Thomas, even in its paraphrased form, also fails to support his Equal Protection Clause argument. At best, this testimony reveals that the Florida Highway Patrol provides Troopers assigned to the CIU with additional training in the form of drug interdiction. There is no indication in Trooper Ferrell's testimony or elsewhere, that the CIU is acting in an unconstitutional manner. As Trooper Ferrell explained, he is "a traffic officer first" who is tasked with enforcing the traffic laws and writing tickets. (Doc. #85 at 91:25-92:2). The fact that he has specialized training in drug interdiction does not in any way indicate unlawful behavior. Without such an indication, Judge Mirando did not err by failing to mention every aspect of Trooper Ferrell's testimony in the Report.

   *2. There is No Basis for Thomas' "Macro" CIU Argument*

Thomas next argues that Judge Mirando erred by failing to consider the "macro" perspective of his argument averring that the standards employed by the CIU qualify as "an extreme practice" in violation of *Whren*, 517 U.S. 806, 116 S.Ct. 1769. (Doc. #109 at 3). As Thomas explains, he "challenged the actions of the CIU officers in this matter[] by showing the extreme circumstances to which [he] was subjected to the overarching CIU

4

principles and standards in executing a traffic stop in which they engage the occupants in unsubstantiated highly intrusive investigatory tactics based solely on noncriminal behavior." (Doc. #109 at 3). Even without the benefit of a response from the Government, the Court finds this argument unpersuasive.

To support this argument, Thomas focuses on two acts that he believes illustrate the unlawful actions of the CIU. (Doc. #109 at 4). The first relates to Trooper Ferrell "deem[ing] noncriminal, innocent behavior of a vehicle slowing down upon seeing an officer as suspicious." (Doc. #109 at 4). But on this point, Thomas conveniently ignores the fact that Trooper Ferrell did not stop the vehicle he was traveling in only because it slowed down upon seeing Trooper Ferrell's patrol car; Trooper Ferrell initiated the underlying traffic stop because the window tint on Cornelius' vehicle violated Florida law. This illegal window tint gave Trooper Ferrell the probable cause needed to initiate the underlying traffic stop, no matter whether he considered a car slowing down upon seeing a marked patrol car suspicious or not. *See Whren*, 517 U.S. at 813, 116 S.Ct. at 1774 ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.").

The second act relates to Florida Highway Patrol Trooper Michael Grider's testimony "that he knew he was going to be deploying the K-9 unit to circle the vehicle when he arrived on scene." (Doc. #109 at 4 (citing Doc. #85 at 170:23-25)). Once again, Thomas exaggerates testimony and takes it out of context to support his argument. While Trooper Grider did testify that he knew he was going to deploy the K-9 "when [he] arrived on the scene," this decision was not made the second he arrived at the traffic stop. (Doc. #85 at 170:23-171:5). Rather, it was only once Trooper Grider spoke with the occupants

and "smelled the odor of burnt marijuana[] [that he] knew [he] was going to deploy the dog." (Doc. #85 at 171:4-5).

Simply put, Thomas believes the CIU employs standards and "principles" that violate the Equal Protection Clause. But he has failed to identify any testimony supporting this position. The testimony that Thomas relies on illustrates Troopers Ferrell and Grider had probable cause for any actions they took that fell within the gambit of the Fourth Amendment, and there is not a scintilla of evidence illustrating any improper motive. As such, Judge Mirando did not err in rejecting Thomas' argument that the standards employed by the CIU violate the Equal Protection Clause.

*3.  Trooper Ferrell Lawfully Stopped the Vehicle in Which Thomas was Traveling*

Thomas continues by arguing Judge Mirando erred in concluding that "Trooper Ferrell lawfully stopped the vehicle in which [he] was traveling." (Doc. #109 at 5). To be exact, Thomas asserts that "the Report is woefully inadequate in that its conclusion does not even consider that at the time of [Trooper] Ferrell's determination to make the stop based on the alleged illegal window tints that he was travelling at sixty-eight miles per hour in a seventy [] mile per hour speed zone." (Doc. #109 at 5). In other words, Thomas believes the Court must account for any possible subjective motivation Trooper Ferrell had – i.e., finding it suspicious that a vehicle slowed down upon seeing a patrol car or that it was a specific make/model of vehicle – when determining whether there was probable cause for the underlying traffic stop.

This argument can be easily dismissed, as the Supreme Court has routinely rejected the "argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved." *Id*. at 813, 116 S.Ct. at 1774.

As previously noted, "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." *Id.* Here, it is undisputed that the front windows of the vehicle Thomas was traveling in were tinted beyond the limits allowed under Florida law. This illegal tint, which Trooper Ferrell observed as the vehicle passed him, provided Trooper Ferrell with the probable cause necessary to initiate a traffic stop. Whether Trooper Ferrell personally found it suspicious that a Chevrolet Malibu slowed down upon seeing his patrol car plays no part in this determination. Accordingly, Judge Mirando did not err in determining that Trooper Ferrell lawfully stopped the vehicle in which Thomas was traveling.

    4. *Troopers Ferrell and Grider's Testimony is Credible*

Thomas' final argument focuses on Troopers Ferrell and Grider's testimony that they both independently smelled the odor of burnt marijuana coming from the vehicle in which he was traveling. (Doc. #109 at 5-7). Thomas believes the Court should not find this testimony credible because "[t]here is no support in the record that the Troopers actually smelled marijuana when there was ultimately none found and there were no police procedures taken to determine if [he] or the driver were under the influence of marijuana." (Doc. #109 at 6). Even without the benefit of a response from the Government, the Court finds this argument unpersuasive.

When a magistrate judge determines that the testimony of a law enforcement officer is credible, even when that testimony is challenged by other testimony, district courts "should defer to the magistrate judge's determinations unless [her] understanding of the facts appears to be 'unbelievable.'" *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (citation omitted). Turning to this case, Judge Mirando found both

Trooper Ferrell and Trooper Grider provided credible testimony. And there is nothing in the record indicating Judge Mirando's understanding of the facts appears "unbelievable."

While Thomas focuses on the fact that no marijuana was found and no sobriety tests were conducted, this does not change the fact that marijuana could have been smoked in the vehicle or by the occupants outside the vehicle at some point earlier, which left a lingering scent that alerted Troopers Ferrell and Grider. Thomas did not present a single witness that contradicted the Troopers' testimony, nor did he testify on this issue himself. Having been presented with only the consistent testimony of Troopers Ferrell and Grider, whom Judge Mirando found credible, the Court finds no reason to doubt the credibility of the Troopers' testimony at this time. See *United States v. Salley*, 341 F. App'x 498, 501 n.4 (11th Cir. 2009) (explaining that when an officer testifies that they based their reasonable suspicion on the smell of marijuana, but no marijuana is discovered in a subsequent search, it is for the magistrate judge to determine whether this testimony is credible).

Based on the foregoing, Defendant Thomas Daquan Dericho's Objections (Doc. #109) are overruled.

**B. Cornelius' Objections**

Cornelius asserts three factual objections and three legal objections to the Report. As to the factual objections, Cornelius takes issue with (1) Judge Mirando's finding that Thomas and Cornelius provided the Troopers with "inconsistent statements concerning their travel itinerary" (Doc. #110 at 1-4); (2) Judge Mirando's finding that the Troopers' testimony regarding the smell of burnt marijuana was credible (Doc. #110 at 4-6); and (3) Judge Mirando's finding that the record does not reflect that the ordinary traffic stop

transformed into a custodial encounter (Doc. #110 at 6-9).  The legal objections relate to (1) Judge Mirando concluding that the traffic stop converted into a drug investigation (Doc. #110 at 9-12); (2) Judge Mirando concluding Cornelius was not unlawfully detained (Doc. #110 at 12-13); and (3) Judge Mirando concluding Cornelius was not in custody, as defined by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

1. <u>Factual Objections</u>

    i. *Thomas and Cornelius Provided Inconsistent Statements*

Cornelius first takes issue with Judge Mirando's factual determination that he and Thomas provided inconsistent statements as to their travel plans.  Specifically, Cornelius avers Judge Mirando ignored a "critical exchange on cross-examination" that his counsel had with Trooper Ferrell that illustrates only consistent statements were provided.  (Doc. #110 at 2-3 (citing Doc. #85 at 55-56)).  The Court disagrees.  While the Court agrees the cross-examination of Trooper Ferrell illustrates that the macro perspective of Cornelius' and Thomas' travel plans were conceivable, Cornelius ignores clear inconsistencies between his and Thomas' statements to Trooper Ferrell at the traffic stop.

For example, while both Cornelius and Thomas told Trooper Ferrell that they were headed to Tampa for a "Kevin Gates concert," Cornelius said the concert was one week away (Doc. #85 at 24:13-25:3), whereas Thomas stated he only planned to stay in Tampa for a couple days (Doc. #85 at 41:22-42:2).  Neither Cornelius nor Thomas could provide Trooper Ferrell with the name of the venue where the concert would be held.  (Doc. #85 at 25:4-9, 41:17-20).  And there were also inconsistencies as to whether they had tickets to the concert, as Cornelius said a cousin or friend had bought them tickets (Doc. #85 at 25:1-3), but Thomas said they did not have tickets (Doc. #85 at 41:19-22).  Even when

considering the "critical exchange on cross-examination," the Court finds these facts sufficiently allowed Judge Mirando to conclude "Cornelius and Thomas provided inconsistent answers about their itinerary." (Doc. #108 at 24).

    *ii.    The Troopers' Testimony as to Marijuana is Credible*

The Court has already rejected an argument contending the Troopers' testimony as to smelling the odor of burnt marijuana was not credible, and the Court declines to address this issue again.

    *iii.    The Record Illustrates Immediate Miranda Warnings Were Unnecessary*

Cornelius next takes issue with Judge Mirando's determination that "the record does not reflect that Defendants were told they could not leave and does not feature the kinds of other inherently coercive behavior that courts have found transform an ordinary traffic stop into a custodial encounter." (Doc. #110 at 7 (citing Doc. #108 at 26)). Simply stated, Cornelius believes Judge Mirando erred by ignoring clear evidence in the record that illustrates the traffic stop evolved into a custodial encounter as soon as Cornelius was instructed to join Trooper Ferrell at his vehicle, and this encounter required Trooper Ferrell to provide *Miranda* warnings, which he failed to do. Even without the benefit of a response from the Government, the Court finds this argument unpersuasive.

Cornelius' entire argument rests upon the fact that (1) Trooper Ferrell ordered him out of his car; (2) Trooper Ferrell told him where to stand; (3) Trooper Ferrell asked him "repetitive and pointless questions"; (4) Trooper Ferrell held his driver's license and other necessary documentation; and (5) Trooper Ferrell expressed that he would be free to go once the Trooper ran "the dog around [his] car right quick." (Doc. #110 at 8). These acts, according to Cornelius, necessitate *Miranda* warnings because he did not feel he was at

liberty to terminate the questioning and leave.  When addressing a similar argument, the Eleventh Circuit noted that "[a] reasonable person knows that he is not free to drive away from a traffic stop until it is completed, just as a reasonable person knows that he is not free to walk away from a *Terry* stop until it is over."  *United States v. Acosta*, 363 F.3d 1141, 1149 (11th Cir. 2004).  After all, "[i]f the lack of freedom to leave were decisive, which is to say if every phrase in the *Miranda* opinion is to be applied literally, then all traffic stops as well as all *Terry* stops generally would be subject to the requirements of that decision."  *Id.*  But in *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984), the Supreme Court held that they are not.  *Id.*

The record illustrates that while the acts at issue might have left Cornelius with the feeling he was not at liberty to terminate the questioning and leave, these acts did not exert pressure upon Cornelius that sufficiently impaired his free exercise of his privilege against self-incrimination, requiring that he be warned of his constitutional rights.  *Id.* (citation omitted). He was not held at gunpoint, handcuffed, or placed in the backseat of Trooper Ferrell's patrol vehicle during the acts at issue.  He was detained while Trooper Ferrell completed his traffic stop investigation, which was prolonged once Trooper Ferrell had reasonable suspicion that illegal activity beyond the traffic offense was afoot based on the odor of burnt marijuana emitting from the vehicle Cornelius was driving.  *See United States v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003) ("A traffic stop may be prolonged where an officer is able to articulate a reasonable suspicion of other illegal activity beyond the traffic offense.") (citation omitted).  Clearly, Judge Mirando did not err in concluding *Miranda* warnings were unnecessary at the time the acts at issue took place.

2. <u>Legal Objections</u>

   i.   The Traffic Stop was Not Unconstitutionally Prolonged

Cornelius first objects to the determination that the traffic stop was unconstitutionally prolonged based on the reasonable suspicion of illegal activity. To be exact, Cornelius contends that either Trooper Ferrell "unreasonably prolonged the stop by not summoning his K9 partner when he had all of the information he needed to summon his K9 partner" or "unreasonably prolonged the stop in that he . . . needed to confirm or dispel some other suspicion related to his drug investigation but, instead of doing so, engaged in pointless, repetitive and irrelevant questioning." (Doc. #110 at 10-11). Even without the benefit of a response from the Government, the Court finds this argument unpersuasive.

Essentially, Cornelius takes issue with the time it took Trooper Ferrell to summon a K9 unit to the scene after Trooper Ferrell first made contact with his vehicle. That time period, based on Cornelius' calculation, is less than four minutes in length. (Doc. #97 at 2-3). In making this argument, Cornelius appears to contend that upon having reasonable suspicion of illegal activity beyond the traffic offense, a law enforcement officer must immediately drop every task related to the traffic offense and focus solely on the suspicion of other illegal activity. The Court disagrees.

During the time period at issue, Trooper Ferrell obtained Cornelius' license and registration, questioned Cornelius about his illegal tint, questioned Cornelius about his record, questioned Cornelius about his travel plans, checked the status of Cornelius' license, and asked the Florida Highway Patrol dispatcher to run a criminal check on Cornelius for outstanding warrants. (Doc. #97 at 2-3). All of these actions related to (1)

12

the underlying traffic offense or (2) confirming or dispelling the suspicion of illegal activity beyond the traffic offense. Two minutes later, Trooper Grider arrived with a K9 to assist in Trooper Ferrell's investigation. Almost immediately, Trooper Grider independently suspected the same illegal activity after making contact with Thomas in the passenger's seat. (Doc. #97 at 3; Doc. #85 at 37-38).

There is no evidence in the record indicating that the traffic stop was unconstitutionally prolonged. After pulling over Cornelius' vehicle, Trooper Ferrell smelled the odor of burnt marijuana and immediately had reasonable suspicion of illegal activity beyond the traffic offense. At that time, Trooper Ferrell asked Cornelius to step back to his patrol car, where he asked him questions related to the traffic offense and his suspicion of additional illegal activity. During this same time period, Trooper Ferrell also used his computer and the dispatcher to run license and background checks. When Trooper Ferrell was not able to dispel his suspicion during this short time period, he summoned his K9-unit partner to the scene. This reasonable suspicion of illegal activity beyond the traffic offense justified detaining Cornelius and Thomas for this time period.[4] *See* United States v. Hernandez, 418 F.3d 1206, 1211 (11th Cir. 2005) ("Even *if* the duration of the pre-consensual detention in this case did extend beyond what might have been reasonable for just a routine traffic stop, the facts that came to light from the beginning of the stop—facts giving rise to reasonable suspicion that an additional crime

---

[4] Cornelius' only support for this argument is the recent Supreme Court case *Rodriguez v. United States*, 575 U.S. ----, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015). But *Rodriguez* is inapplicable to this action because it dealt with whether police may extend an other-wise completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff. *Id.* Here, Trooper Ferrell had reasonable suspicion that allowed the traffic stop to be prolonged.

was being committed—were more than sufficient to justify this detention of no more than seventeen minutes.") (emphasis in original).

    *ii.    Suppression of Cornelius' Statements Based on the Fourth Amendment is Not Warranted*

The second legal objection, averring any statements Cornelius made during the investigation must be suppressed, is premised on the Court determining that the traffic stop was unconstitutionally prolonged. (Doc. #110 at 12-14). But the Court has already rejected the underlying prolongment argument, and therefore this objection is moot.

    *iii.    Suppression of Cornelius' Statements Based on Miranda is Not Warranted*

The third and final legal objection, also averring any statements Cornelius made during the investigation must be suppressed, is premised on the Court determining that Cornelius was in custody for *Miranda* purposes. (Doc. #110 at 14-16). But the Court has already rejected the underlying custody argument, and therefore this objection is moot.

Based on the foregoing, Defendant Cornelius Davon Dericho's Objections (Doc. #110) are overruled.

Accordingly, it is now

**ORDERED:**

1. Magistrate Judge Carol Mirando's Report and Recommendation (Doc. #108) is **ACCEPTED and ADOPTED**, and specifically incorporated into this Order.

2. Defendant Cornelius Davon Dericho's Objections (Doc. #110) are **OVERRULED**.

3. Defendant Thomas Daquan Dericho's Objections (Doc. #109) are **OVERRULED**.

4. Defendant Cornelius Davon Dericho's Motion to Suppress (Doc. #47), in which Defendant Thomas Daquan Dericho joined (Doc. #49), is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this 25th day of September, 2015.

*[Signature]*

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  Counsel of Record